303 P.2d 1097

COOMBS AND COMPANY OF OGDEN, Inc., a corporation, Plaintiff and Respondent,

v.

James E. REED, d/b/a James E. Reed Company, Defendant and Appellant.

No. 8506.

Supreme Court of Utah.

Nov. 27, 1956.

Geo. E. Bridwell, Salt Lake City, for appellant.

Richard W. Campbell, Ogden, for respondent.

McDONOUGH, Chief Justice.

420

Plaintiff and defendant, two uranium brokers doing business in Utah, entered into an agreement whereby defendant agreed to sell 100,000 shares of Wyoming Uranium Corporation stock and plaintiff agreed to buy the same for a contract price of $2,760. Subsequently, plaintiff entered into separate subcontracts with his customers by which he promised to sell the shares for 3¢ per share, receiving payments thereon. Thereafter, defendant breached the contract of sale by refusing to deliver the stock to plaintiff. At the time of refusal of delivery, the market value of the stock was 6¢ per share. Plaintiff, being in a financial position incapable of purchasing other stock from the market, refunded the money paid to each of his customers and commenced action against defendant, to which action none of his customers joined. The trial court found the measure of damages to be the difference between the contract price and the market price at the date delivery was refused, a sum of $3,240. The plaintiff was not acting as the subpurchasers' broker.

Defendant admits breaching the contract, but contends he should pay only the commission lost, a difference in contract price and plaintiff's selling price, and not the difference in the contract price and the market price. He argues axiomatically that the true object of a lawsuit is to make whole, not to make rich. Plaintiff invokes U.C.A. 60-5-5(3) of the Uniform Sales Act literally, contending that where an ascertainable market is available, the measure of damages is the difference between contract price and market value at the time of refusal to deliver.

The question raised by this appeal, then, is: Does the measure of damages for a seller's refusal to deliver stock in breach of a contract to sell at a certain price consist of the difference in contract price and the market price at the time of refusal to deliver, when the buyer intended to resell at a profit?

U.C.A.1953, 60-5-5(3) reads as follows:

"(3) Where there is an available market for the goods in question, the measure of damages, in the absence of special circumstances showing proximate damages of a greater amount, is the difference between the contract price and the market or current price of the goods at the time or times when they ought to have been delivered, or, if no time was fixed, then at the time of the refusal to deliver."

We see no valid reason why the statute should not be interpreted literally, according to the natural meaning of its phraseology. If we were to allow damages in the form of profits lost by the buyer from his inability to perform his subcontracts,

which necessitates computation of the difference between the contract price and the buyer's selling price, the original seller could gamble with the market. He would be in position to repudiate his contract, pay the buyer's lost profits as damages, and resell the stock in a higher market at a greater profit; or, in the event the market fell, he could choose to deliver the stock at the original contract price and reap his original profit. The legislature in the enaction of the above section made a pronouncement against such speculation.

Defendant relies upon several cases which were not decided under either the provisions of the Uniform Sales Act or similar statutes. These authorities cannot support his argument favoring an interpretation opposed to the plain and literal meaning of the statute set out above. Apparently these cases were taken from the footnote of a text in Williston, Contracts, (rev. ed. 1936) Vol. V. p. 3877, § 1386, which reads as follows:

"  *  *  *  But the buyer may have been bound by a subcontract with a third person to deliver to the latter the very goods which he expected to obtain from the defendant. Here, there is authority for restricting the plaintiff to the profit which he would have obtained had he performed his contract with the third person."

In the next sentences, however, the writer analyzes the effect of the Uniform Sales Act on the above limitation of damages:

"The Uniform Sales Act, however, provides that a buyer's 'measure of damages in the absence of special circumstances showing proximate damages of a greater amount, is the difference between the contract price and the market or current price of the goods at the time or times when they ought to have been delivered, or, if no time was fixed, then at the time of the refusal to deliver.' The use of the word 'greater' in this passage seems to negative the possibility in states where the statute has been enacted of restricting the plaintiff's damages in the case supposed, and this conclusion seems nearly, if not quite always, sound on principle. The extent of the wrong which the defendant has committed is measured by the difference between the market price and the contract price, and though the full amount of the reparation for this wrong would not have accrued to the profit of the plaintiff if the contract had been carried out, the profit which he would have made, added to the liability to which he would expose himself to the third person if he failed to perform the subcontract, together amount to the full sum for which the defendant should be held." See also Brightwater Paper Co.

v. Monadnock Paper Mills, D.C.D. Mass., 68 F.Supp. 714, affirmed 1 Cir., 161 F.2d 869; Iron Trade Products Co. v. Wilkoff Co., 272 Pa. 172, 116 A. 150.

At the time of requested delivery the stock was worth, according to the market value, $6,000, which was $3,240 more than the contract price. If we were to allow plaintiff to recover merely his lost profit if he had resold, we would sanction an enrichment in favor of one who breached his contract. The defendant could have sold the stock on the market at $6,000 at the time he breached the contract, which would have reaped him a $3,240 gross profit. If he paid plaintiff the loss of plaintiff's profits, i. e., $240, defendant would profit $3,000, with plaintiff's being amenable to suits by his customers for his breach of the subcontracts.

Since the provision of the Sales Act is both a codification of the sounder common law rule and a clear expression of legislative intent, the measure of damages for failure to deliver stock in breach of a contract of sale, in an available market, is clearly the difference in contract price and market price at the time of the refusal to deliver, even where the buyer purchased for resale at a specified price.

The judgment below is affirmed. Costs to respondent.

CROCKETT, HENRIOD, WADE and WORTHEN, JJ., concur.